IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID MCCLORY, | ) | CASE NO. 3:09CV0703 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE GAUGHAN |
| v. | ) | |
| | ) | MAGISTRATE JUDGE VECCHIARELLI |
| ROBERT WELCH, Warden, | ) | |
| | ) | |
| | **)** | REPORT AND RECOMMENDATION |
| Respondent. | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2). Before the court is the petition of David McClory ("McCloyr") for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 on March 27, 2009. McClory is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case of *State of Ohio vs. McClory*, Case No. 07-CR-024 (Henry County 2007). For the reasons set forth below, the court should dismiss McClory's petition.

I.

The second part of the 2007 term of the Henry County grand jury indicted McClory on eight counts of aggravated rape by force against a child under the age of thirteen. McClory initially pleaded not guilty. After negotiations with the state, McClory changed his plea of no contest on the first four counts with the force specification deleted. On

November 26, 2007, the court sentenced McClory to four terms of imprisonment of nine years on each of the four counts, three terms to be served consecutively and one term to be served concurrently with the other counts, for a total of 27 years' imprisonment. The court also imposed a term of supervised release and found McClory to be a sexual predator.

McClory timely appealed his sentence. McClory raised two assignments of error in his appeal:

> Assignment of Error #1: The Trial Court imposed a sentence in this case that was in violation of the United States Constitution, as the statutory findings to justify enhancement of a non-minimum sentence and of consecutive sentencing were not subjected to Due Process protections, including the rights to presentment to a Grand Jury, proof beyond a reasonable doubt, and trial by jury, among others, as required per *Apprendi* and *Blakely*.
>
> Assignment of Error #2: The Trial Court imposed a this [sic] twenty-seven (27) year sentence as a result of imposing a non-minimum sentences [sic] and consecutive sentencing, and that net sentence was imposed in violation of Ohio sentencing law, being a non-minimum sentencing for a first offender without sufficient statutory findings to justify that enhancement and consecutive sentencing without sufficient statutory findings for consecutive sentencing.

On March 31, 2008, the state appellate court affirmed the judgment of the sentencing court.

McClory timely appealed the state appellate court's decision to the Ohio Supreme Court. In his memorandum in support of jurisdiction, McClory asserted one proposition of law:

> Proposition of Law No. I: The remedy that this Court ser forth in *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856 violates the Ex Post Facto and Due Process Clauses of the United States Constitution.

On September 10, 2008, the Ohio Supreme Court dismissed his appeal as not involving any substantial constitutional question.

On March 27, 2009, McClory filed in this court a petition for a federal writ of habeas

2

corpus. McClory asserts a single ground for relief in his petition:

> **Ground one:** The remedy that the Ohio Supreme Court set forth in *State v. Foster*, 109 Ohio St.3d 1, 845 N.E.2d 470 (Ohio Sup. Ct. 2006) violates the Ex Post Facto and Due Process Clauses of the United States Constitution.

Respondent filed an Answer/Return of Writ on May 27, 2009. Doc. No. 4. McClory filed a Traverse on June 12, 2009. Doc. No. 5. Thus, the petition is ready for decision.

II

*A. Jurisdiction*

The Court of Common Pleas of Henry County, Ohio sentenced McClory. McClory filed his writ of habeas corpus in the Northern District of Ohio and raises claims regarding the constitutionality of his incarceration under 28 U.S.C. § 2254.

> Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. . . . Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a State court of a State which contains two or more Federal judicial districts, the application may be filed in the district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application.

28 U.S.C. § 2241(a) & (d). Henry County is within this court's geographic jurisdiction. This court has jurisdiction over McClory' petition.

*B.     Evidentiary hearing*

The habeas corpus statute authorizes an evidentiary hearing in limited circumstances when the factual basis of a claim has not been adequately developed in state court proceedings. 28 U.S.C. § 2254(e)(2). There is no need for an evidentiary hearing in the instant case. All of McClory's claims involve legal issues which can be independently resolved without additional factual inquiry.

3

*C.     Exhaustion of state remedies*

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas corpus. 28 U.S.C. § 2254(b) and (c); *Castillo v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. Macklin*, 936 F.2d 790, 793 (6th Cir. 1991). If any state procedures for relief remain available, the petitioner has not exhausted state remedies. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

A petitioner must fairly present any claims to the state courts in a constitutional context properly to exhaust state remedies. *Anderson v. Harless*, 489 U.S. 4 (1982); *Picard v. Connor*, 404 U.S. 270 (1971); *Shoultes v. Laidlaw*, 886 F.2d 114, 117 (6th Cir. 1989). "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied." *Picard*, 404 U.S. at 275; *see also Harris v. Reeves,* 794 F.2d 1168. 1174 (6th Cir. 1986). The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims. *Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).

The requirement that petitioners exhaust state remedies is a matter of comity between the federal government and the states:

> The exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings. . . . Because "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation," federal courts apply the doctrine of comity, which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter."

*Rose v. Lundy*, 455 U.S. 509, 518 (1982) (quoting *Darr v. Burford*, 339 U.S. 200, 204 (1950)) (other citations omitted).  Because exhaustion is a matter of comity, a petition containing unexhausted claims may be denied on the merits.  28 U.S.C. § 2254(b)(2).

McClory has no state remedies available for his claims.  Because no state remedies remain available to him, McClory has exhausted state remedies.

*D.    Procedural default*

Reasons of federalism and comity generally bar federal habeas corpus review of "contentions of federal law . . . not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure."  *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  When a petitioner

> has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  Procedural default occurs when a petitioner fails to present fairly to the highest state court his claims in a federal constitutional context.  *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Anderson v. Harless*, 459 U.S. 4 (1982).  Moreover, a failure to present a claim to the highest court in the state deprives a federal court hearing a habeas petition of jurisdiction on that issue.  *See McKeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).

If the state argues that a petitioner has procedurally defaulted his claims, the court must conduct a four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the procedural default may be excused:

First, the court must determine that there is a state procedural rule that is applicable

5

> to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . . Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. . . . This question generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims. . . . [Fourth, if] the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate . . . that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  A default will also be excused if petitioner demonstrates that not excusing the default "will result in a fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750.

Respondent does not argue that McClory has defaulted his claim.

III.

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") altered the standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus.  As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under the current deferential standard of review, a writ of habeas corpus may issue only if the state court's decision is contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence.  *Carey v. Musladin*, 549 U.S. ___, 127 S. Ct. 649, 653 (2006); *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000).

6

Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the petitioner's conviction. *Carey*, 127 S. Ct., at 653.

Courts must give independent meaning to the phrases "contrary to" and "unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court. Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 404-05 (emphasis added by the quoting court). A decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at an opposite result. *Id.* at 405-06. "A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases." *Id.* at 405. A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand. *Doan v. Brigano*, 237 F.3d 722, 729-31 (6th Cir. 2001). The court will examine McClory's ground for relief using the deferential standard applied to state court rulings on the petitioner's claim.

McClory contends that his sentencing pursuant to *Foster* violated the Ex Post Facto and Due Process Clauses of the Constitution.

*A. Alleged violation of the Ex Post Facto Clause*

7

McClory asserts that his sentencing pursuant to *Foster*, a decision made after McClory committed his crimes, violates the *Ex Post Facto* Clause of the Constitution because McClory received a higher sentence, by way of non-minimum sentences and consecutive sentences, than he could have received prior to *Foster*. Article I, § 10 of the United States Constitution provides that no state shall pass *ex post facto* laws. U.S. Const, Art. I, § 10. The Constitution's bar against *ex post facto* laws, however, does not apply to courts:

> The *Ex Post Facto* Clause, by its own terms, does not apply to courts. Extending the Clause to courts through the rubric of due process . . . would circumvent the clear constitutional text. It also would evince too little regard for the important institutional and contextual differences between legislating, on the one hand, and common law decisionmaking, on the other.

*Rogers v. Tennessee,* 532 U.S. 451, 460 (2001).

Although the *Ex Post Facto* Clause does not apply to courts, "limitations on *ex post facto* judicial decisionmaking are inherent in the notion of due process." *Id.* at 456. In particular, the Supreme Court has found that a court may not unexpectedly and indefensibly construe a criminal statute so as to criminalize conduct which had not been criminal prior to the court's new construction. *See Bouie v. City of Columbia*, 378 U.S. 347 (1964). The Supreme Court has explicitly declined, however, to apply all the protections of the *Ex Post Facto* Clause to courts by way of the due process clause. *Id.* at 458-461.

In the present case, McClory argues that because the events specified in the indictment occurred before the decision in *Foster*, application of *Foster's* judicially-reconstructed sentencing statute violated his right to be free from *ex post facto* laws. This argument is supported in part by *Bouie v. City of Columbia*, 378 U.S. 347, 353 (1963), in which the Supreme Court held that "an unforeseeable judicial enlargement of a criminal

8

statute, applied retroactively, operates precisely like an *ex post facto* law, such as Art. I, § 10, of the Constitution forbids." *See also* Rogers v. Tennessee, 532 U.S. 451, 459 (2001).

McClory's argument is not well-taken for three reasons. First, the judicial enlargement of a criminal statute in *Bouie* was very different from the alleged enlargement in *Foster*. In *Bouie*, a South Carolina statute prohibited entry onto land after the posting of notice prohibiting such entry. Defendants were arrested pursuant to that statute during a lunch counter sit-in for civil rights when they were ordered to leave after being notified that they were trespassing if they remained. The defendants had not been given notice prohibiting their entry to the lunch counter prior to their entry. Upon appeal, the South Carolina supreme court re-interpreted the relevant statute to prohibit remaining on a property after notice was given as well as entry onto the property. The Supreme Court struck down the convictions and agreed with the appellants that South Carolina had punished them for conduct that was not criminal at the time they committed it, thus violating the requirement of the due process clause that a criminal statute give fair warning of the conduct which it prohibits. According to the Court, "If a judicial construction of a criminal statute is 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue,' it must not be given retroactive effect." *Bouie*, 378 U.S. at 354 (quoting Hall, GENERAL PRINCIPLES OF CRIMINAL LAW (2d ed. 1960), at 61).

*Foster* differs considerably from *Bouie*. *Foster* did not criminalize any conduct which had not been criminal prior to the decision. Nor did *Foster* increase the maximum penalty that could be handed down for a crime. Rather, *Foster* excised those portions of Ohio's sentencing statute that required judicial findings of fact before a court could sentence a defendant to more than a minimum sentence or to consecutive sentences. *Bouie* does not

prohibit this.

Second, McClory's position is foreclosed in part by *Dobbert v. Florida*, 432 U.S. 282 (1977). McClory contends that Ohio may not sentence him pursuant to a statute that it modified after McClory's criminal conduct because this fails to give him fair warning of his potential punishment. As the Eleventh Circuit first pointed out in *United States v. Duncan*, 400 F.3d 1297 (11th Cir. 2006), *Dobbert* contradicts this proposition:

> Whether or not the old statute would in the future, withstand constitutional attack, it clearly indicated Florida's view of the severity of murder and of the degree of punishment which the legislature wished to impose upon murderers. The statute was intended to provide maximum deterrence, and its existence on the statute books provided fair warning as to the degree of culpability to which the State ascribed to the act of murder.

*Duncan*, 400 F.3d at 1307-08. Similarly, although Ohio's sentencing statutes at the time of McClory's criminal acts were unconstitutional, they nevertheless gave him fair notice of the acts that were prohibited and the degree of punishment which the Ohio legislature wished to impose on those who committed those acts. As the reinterpreted statute did not increase the maximum penalty to which McClory was potentially subject, McClory cannot say that the state failed to give fair warning of what was prohibited or of the potential penalties to which he would be subject if he committed those acts.

Third, McClory's position is contradicted by *United States v. Booker*, 543 U.S. 220 (2005), and its progeny. In *Booker*, the Supreme Court confronted the constitutionality of a federal sentencing statute that resembled Ohio's insofar as it required specified judicial findings of fact for upward departures from a base sentence. The Court found that such mandatory factfinding violated the holding in *Apprendi,* and excised those portions of the statute requiring judicial factfinding before increasing a base sentence. The Supreme Court

10

also allowed sentencing courts to use the previously-mandatory sentencing factors as guidelines that should be considered in sentencing. The Court required other federal courts to apply both parts of its holding--striking the mandatory findings on Sixth Amendment grounds and using the previously-mandatory factors as guidelines--to future cases because applying both holdings in combination best approximated the will of Congress in enacting sentencing reform. *Id.* at 249. Finally, the Court struck those sections of the statute requiring a relatively strict appellate review for departures from mandatory sentencing guidelines and found that the resulting statute implied appellate review under a "reasonableness" standard. *Id.* at 259-60.

When the Ohio Supreme Court determined that Ohio's sentencing statutes violated the holding in *Blakely*, it explicitly turned to *Booker* to cure the statutes' unconstitutionality. *Foster*, 109 Ohio St. 3d at 26-27, 845 N.E.2d at 495-96. Thus, the Ohio Supreme Court excised those portions of the statutes requiring judicial factfinding using certain factors before making upward departures from a base sentence or before sentencing to consecutive sentences. *Id.*, 109 Ohio St. 3d at 28-30, 845 N.E.2d at 497-98. It also instructed Ohio courts to use the factors enumerated in the statutes as guidelines in making sentencing determinations. *Id.*, 109 Ohio St. 3d at 30, 845 N.E.2d at 498. Sentencing courts were thus free to sentence defendants anywhere within the sentencing ranges set by the Ohio legislature for various crimes or to consecutive sentences, using the previously-mandatory factors as guidelines to determine where in the range a defendant should be sentenced. The resulting statutes, according to the Ohio Supreme Court, best approximated the will of the legislature in passing the sentencing statutes while doing away with the statutes' unconstitutionality. *Id.*

A number of federal defendants have alleged that the federal sentencing statutes reshaped by *Booker* violate due process because they subject defendants to *ex post facto* laws.  Those challenges have been universally rejected.  *See United States v. Scroggins*, 411 F.3d 572, 575-78 (5th Cir. 2005); *United States v. Jamison*, 416 F.3d 538, 539 (7th Cir. 2005); *United States v. Dupas*, 417 F.3d 1064, 1068-69 (9th Cir. 2005); *United States v. Rines*, 419 F.3d 1104, 1106 (10th Cir. 2006); *Duncan*, 400 F.3d at 1306-08; and *United States v. Alston-Graves*, 435 F.3d 331, 343 (D.C. Cir. 2006).  Lester makes no argument that distinguishes in any relevant respect Ohio's revised sentencing statutes from the revised federal sentencing statutes upheld by the appellate courts.

Finally, the Sixth Circuit has rejected McClory's argument in a case similar in all relevant respects.  In *Hooks v. Sheets*, 603 F.3d 316 (6th Cir. 2010), the court wrote:

> Regardless of the court's determination in *Foster,* the maximum sentence to which Hooks was constitutionally subject contemplated consecutive sentences.  Hooks would have the court calculate his maximum sentence as being imposed concurrently based solely on the facts found by a jury at the time of sentencing, because he argues that this calculation is mandated by *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).  However, *Apprendi* does not limit the calculation of Hooks's potential sentence to concurrent sentences when the judicial fact-finding here is allowed under [*Oregon v.*] *Ice* [, ___ U.S. ___, 129 S.Ct. 711 (2009)].  Thus, Hooks was initially and constitutionally subject to consecutive sentences according to the "guided discretion" of the court.  *See Foster,* 845 N.E.2d at 495.  Moreover, Hooks was always aware of the potential for consecutive sentences.  On re-sentencing post-*Foster* he remained subject to consecutive sentences within the discretion of the court.  Since Hooks was *always* subject to consecutive rather than concurrent sentences in the discretion of the trial court, his re-sentencing under *Foster* did not raise ex post facto or due process concerns.

*Hooks v. Sheets*, 603 F.3d 316, 321 (6th Cir. 2010).[1]

---

[1] The court did not, however, reach the broader question of whether sentencing under *Foster* ever violates the Due Process or Ex Post Facto Clauses because it did not need to do so.

For these reasons, McClory's argument that his sentence violated the prohibition against *ex post facto* laws is not well-taken.

*B.     Alleged violation of due process*

McClory's allegations regarding an alleged violation of due process are somewhat unclear.  McClory's argument seems to be that the sentencing scheme crafted by *Foster* violates due process because trial judges are no longer required to consider consistency or proportionality in sentencing or to give reasons for the sentences they impose. According to McClory, this violates due process because it fails to give effect to the intent of the legislature when it passed the sentencing statute and eliminates the ability of an appellate court effectively to review a sentence.

McClory cites no Supreme Court case standing for the proposition that failure to preserve legislative intent in judicially altering a sentencing scheme is a violation of due process.[2]  McClory's due process argument is similarly deficient.  While there has never been a federal constitutional right to an appeal, *Abney v. United States*, 431 U.S. 651 (1977), "if a State has created appellate courts as 'an integral part of the . . . system for finally adjudicating the guilt or innocence of a defendant,' the procedures used in deciding appeals must comport with the demands of . . . Due Process . . . ." *Evitts v. Lucey*, 469 U.S. 387, 393 (1985) (quoting *Griffin v. Illinois*, 351 U.S. 12, 18 (1956)).  Nevertheless, McClory cites no Supreme Court case holding that a system of appellate review which does not require explanations for sentencing decisions violates due process, and this court

---

[2]   Moreover, given that more than four years have passed since *Foster* was announced without legislative response, the argument that *Foster* contradicted the intent of the Ohio legislature is unconvincing.

13

knows of no such case.  Consequently, McClory has not demonstrated that his sentence was either contrary to clearly established federal law as determined by the Supreme Court of the United States or involved an unreasonable application of clearly established Federal law as determined by the Supreme Court of the United States.

For these reasons, McClory's due process argument is not well-taken.

IV.

For the reasons given above, McClory's sole ground for relief should be dismissed as without merit.  Thus, McClory's petition should be dismissed with prejudice.


Date:  January 24, 2011                              /s/ *Nancy A. Vecchiarelli*
                                                    United States Magistrate Judge

**OBJECTIONS**

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.**

14